Peggy HUMPHREY, Executrix of the Estate of Virgil Humphrey, Deceased, and Morehead Marine Service, Inc., and Northwestern National Insurance Company, Plaintiffs-Appellants,

v.

OHIO BARGE LINE, INC., the M/V STEEL CLIPPER, Barge AGT–150, Barge RGT–50, and Barge RCT–250, Defendants-Appellees,

Home Insurance Company, Intervening-Defendants.

No. 84–5913.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 9, 1985.

Decided Nov. 12, 1985.

William P. Schroeder Morehead, Todd Powers, Cincinnati, Ohio (argued), Willie Mathis, Jr., Walton, Ky., for plaintiffs-appellants.

John K. Gordinier (argued), Pedley, Ross, Zielke & Gordinier, Richard M. Trautwein, C. David Johnstone, Louisville, Ky., for defendants-appellees.

Before KEITH and KRUPANSKY, Circuit Judges, and GIBBONS, District Judge.[*]

KRUPANSKY, Circuit Judge.

This is a wrongful death action arising out of a maritime casualty—the sinking of the harborboat M/V Midwestern and the drowning death of her captain. Plaintiff/appellant Peggy Humphrey, wife of decedent, appeals the district court decision which concluded that defendant/appellee's line towboat, the M/V Steel Clipper, was under no duty to sound a signal pursuant to 33 U.S.C. § 349 and thus was not liable for the death of plaintiff's decedent.

On June 10, 1981, the M/V Midwestern, captained by decedent Virgil Humphrey, attempted to remove a number of empty barges from the line towboat M/V Steel Clipper, by way of a downstream landing facing up to the starboard lead barge of the Steel Clipper tow. The Midwestern landed at an angle with its port tow knee touching the barge and its starboard tow knee 3 to 4 feet off the barge. The swift current caused the Midwestern to top around to its port. It then backed out and around to the side of the starboard lead barge.

---

[*] Hon. Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

As the Midwestern proceeded upstream to position itself to repeat the maneuver, Captain Dryden of the Steel Clipper radioed Humphrey to advise him against attempting the maneuver a second time. Humphrey failed to respond to Dryden's radio call although the district court concluded that Dryden transmitted his message on channel # 10 and Humphrey's vessel was receiving on the same channel as is evidenced by the radio setting of the Midwestern when it was raised. The district court also concluded that the procedure to be employed to remove the empty barges from the line of the towboat, in this case the M/V Steel Clipper, was within the exclusive judgment of the master of the harborboat, in this case the M/V Midwestern. In any event, although Humphrey had several options available to him to remove the empty barges, he elected to repeat his previously attempted maneuver. The maneuver be elected to implement was the quickest and most expeditious means of completing his assignment, albeit the most risky. The maneuver was nevertheless within accepted practice and procedure and was safe if properly performed. On his second attempt Humphrey landed the Midwestern on an angle, with its starboard tow knee contacting the center lead barge with its port tow knee 3 to 4 feet off the barge. The swift current again forced the Midwestern to tip around; this time, however, it was unable to pull out and was forced broadside to the head of the tow and capsized and sank.

The trial court attributed no negligence to Captain Dryden and found his performance throughout the execution of both maneuvers in accordance with custom, practice and standards of proper seamanship.

Following a bench trial, the district court concluded that no duty to sound a danger signal arose under 33 U.S.C. § 349 until the maneuver aborted on the second attempt at which time the sounding of a signal would have been a futile act. The court further was of the opinion that the manner in which the barges were to be removed was within the exclusive discretion of Humphrey who was in command of the removal operation. Finally, the court concluded that the sole cause of the accident was Humphrey's error in electing and improperly performing the maneuver on two separate occasions.

Appellant argues that the district court erred in concluding that the statutory danger signal mandated by 33 U.S.C. § 349(a) was not required to be sounded in this situation. That statute provides:

> If, when steam vessels are approaching each other either vessel for any reason fails to understand, or regards as unsafe, the course or intention of the other, the vessel in doubt shall immediately so signify by giving several short and rapid blasts of her whistle, at least four, the danger signal.

A reading of the foregoing statute discloses that it had no application to the facts of this case. The statute contemplates the sounding of a danger signal to alert a vessel to a dangerous or unsafe situation such as a collision. This may arise when two vessels are intersecting, when one is passing or overtaking another, or when the vessels are on collision courses. The conditions contemplated by the statute are in marked contrast to the scenario presented in the case at bar. First, the Steel Clipper and the Midwestern were working together in mid-stream transferring barges and thus were not "approaching" within the meaning of the statute. Second, the Midwestern intended contact with the Steel Clipper to remove the empty barges. Third, the maneuver was a standard type operation fully comprehended by the masters of both vessels.

Moreover, the statute contemplates the sounding of a danger signal to attract the attention of another vessel so as to alert it to imperceptible potential danger. *See, National Steel Corp. v. Kinsman Marine Transit Co.,* 369 F.Supp. 498, 511 (E.D. Mich.1972) *aff'd.* 492 F.2d 364 (6th Cir. 1974). Since this maneuver could have been performed safely if it were properly executed and since both captains were experienced seamen who were familiar with

the execution of the maneuver, there was no necessity for Dryden to alert Humphrey of the risks inherent to its implementation.

Although this court is of the opinion that the trial court erroneously concluded that 33 U.S.C. § 349 mandated the sounding of a danger signal under the facts and circumstances of this case, it nevertheless arrived at a correct result and its conclusion that the sounding of the danger signal at the time when the danger to the vessel Midwestern became apparent would have been a futile act constitutes harmless error. The district court decision is accordingly AFFIRMED.